# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JAMES DAVIDSON, II,**
**Claimant Below, Petitioner**

**FILED**

November 1, 2019
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0824** (BOR Appeal No. 2052610)
                    (Claim No. 2017020542)

**BLUE RIDGE CREMATORY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner James Davidson II, by Counsel John Shumate Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Blue Ridge Crematory, by Counsel Jeffrey Brannon, filed a timely response.

The issue on appeal is the compensability of the claim for bilateral carpal tunnel syndrome. On March 2, 2017, the claims administrator rejected Mr. Davidson's claim. The Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's Order on February 13, 2018, and ordered the claim compensable for bilateral carpal tunnel syndrome. This appeal arises from the Board of Review's Final Order dated August 28, 2018, in which the Board reversed and vacated the February 13, 2018, Decision of the Office of Judges. The Board concluded that the preponderance of the evidence fails to demonstrate that Mr. Davidson's employment duties had any relationship to his carpal tunnel syndrome.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Davidson is employed as an apprentice funeral director and embalmer with Blue Ridge Crematory, and he has worked for the employer since January 18, 2016. As part of his duties, Mr. Davidson performs suturing and dressing tasks, lifting and removing bodies, completing paperwork and logging data into a computer. He began experiencing numbness and pain in his hands in February 2017. On February 7, 2017, Mr. Davidson underwent an EMG/NCS performed

1

by Glen Goldfarb, M.D. Dr. Goldfarb's testing revealed a prolonged left median sensory latency across the wrist and a mild left carpal tunnel syndrome was diagnosed.

Mr. Davidson first sought medical treatment with Syed A. Zahir, M.D. Mr. Davidson reported pain and numbness in both hands, particularly his right hand. He was noted as weighing 241 pounds, standing 6'2" in height. Dr. Zahir, in a report dated February 9, 2017, diagnosed him with bilateral carpal tunnel syndrome and recommended wrist braces at night and then surgery. Dr. Zahir based his opinion upon the EMG/NCS testing conducted by Dr. Goldfarb. Dr. Zahir signed the physician's section of the Employees' and Physicians' Report of Occupational Injury on February 14, 2017. In the form, Mr. Davidson reported that his condition occurred as a result of continuous suturing, writing, typing, and repetitive movements. Dr. Zahir checked the box indicating an occupational disease and indicated that he has not advised Mr. Davidson to remain off work for more than four days.

On March 1, 2017, Dr. Zahir requested authorization for carpal tunnel syndrome surgery for Mr. Davidson's right hand. In an Order dated March 2, 2017, the claims administrator denied the claim for bilateral carpal tunnel syndrome on the basis that Mr. Davidson's carpal tunnel syndrome is not causally related to his employment. Mr. Davidson protested the claims administrator's decision.

Mr. Davidson completed a carpal tunnel syndrome questionnaire on April 22, 2017, in which he indicated that he has been working for Blue Ridge Funeral Home since January 2016. He previously was diagnosed with hypothyroidism, Addison's disease, and low testosterone. He stated that he routinely performs his work duties in awkward positions, and he does not have a history of prior work-related accidents.

Mr. Davidson was referred for an independent medical evaluation with Prasadarao B. Mukkamala, M.D. In a report dated July 28, 2017, Dr. Mukkamala diagnosed Mr. Davidson with bilateral carpal tunnel syndrome. However, in his professional opinion, Dr. Mukkamala concluded that Mr. Davidson's carpal tunnel syndrome is not causally related to his occupational activities, because Mr. Davidson did not report work activities that involve the degree of repetition and force that is required to cause carpal tunnel syndrome. Dr. Mukkamala found no occupational risk factors for development of carpal tunnel syndrome. Dr. Mukkamala also found that Mr. Davidson's increased body mass index, as well as his hypothyroidism, are important risk factors for the development of the disease. It was Dr. Mukkamala's opinion that the carpal tunnel syndrome is not causally related to his occupational activities.

On August 10, 2017, an evidentiary hearing was held in Beckley, West Virginia, in which Mr. Davidson's testimony was taken. He testified that within a two-week period, he worked ten days on and four days off of work. He testified that he spent four hours, out of an eight hour day, embalming bodies. Three of those hours were spent suturing the incisions which involved intricate work with his hands and wrists. The other four hours of his workday involved carrying caskets, serving as a pallbearer, typing reports, and doing paperwork. He testified that he began having problems with his hands and wrists in January 2017. Mr. Davidson also testified that his father had

been diagnosed with carpal tunnel syndrome and underwent surgery. He stated that he did not have problems with his hands and wrists prior to his job.

In a Final Decision dated February 13, 2018, the Office of Judges reversed the claims administrator's prior ruling of March 2, 2017, and held Mr. Davidson's claim compensable for bilateral carpal tunnel syndrome. The Office of Judges found that the type of work performed by Mr. Davidson met the type of work setting noted in West Virginia Code of State Rules § 85-20-41.5 (2006) that can contribute to carpal tunnel syndrome. The Office of Judges reasoned that there was no medical evidence to support Dr. Mukkamala's theories that nonoccupational-risk factors caused Mr. Davidson's carpal tunnel syndrome. Blue Ridge Crematory appealed to the Board of Review.

The Board of Review entered an Order dated August 28, 2018, reversing the decision of the Office of Judges and denying Mr. Davidson's claim for carpal tunnel syndrome. The Board of Review found that the Office of Judges' analysis and conclusions were clearly wrong in view of the reliable, probative and substantial evidence on the whole record. The Board of Review relied upon Dr. Mukkamala's opinion and concluded that Mr. Davidson's employment activities did not fall into the high-risk categories for the development of carpal tunnel syndrome. As a result, the Board found that the preponderance of the evidence fails to demonstrate that Mr. Davidson's employment duties had any relationship to his carpal tunnel syndrome. The claims administrator's order of March 2, 2017, which rejected the claim, was reinstated.

After review, we agree with the decision of Board of Review. In his independent medical evaluation dated July 28, 2017, Dr. Mukkamala found nonoccupational-risk factors for the development of carpal tunnel syndrome in the form of excessive weight and hypothyroidism. The Board of Review noted that West Virginia Code of State Rules § 85-20-41.4 (2006) includes hypothyroidism and obesity as abnormalities and conditions that can precipitate carpal tunnel syndrome symptoms. The Board found that Mr. Davidson's job duties do not fall in the high-risk categories for the development of carpal tunnel syndrome. Given the evidence of record, the Board did not err in concluding that Mr. Davidson's employment duties had no relationship to his carpal tunnel syndrome.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 1, 2019**

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins

**DISSENTING**:
Justice Margaret L. Workman
Justice John A. Hutchison

4